Filed 5/4/26  Ehrlich v. The Jewish Federation etc. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| REBECCA EHRLICH,<br><br>    Plaintiff and Appellant<br><br>    v.<br><br>THE JEWISH FEDERATION-COUNCIL OF GREATER LOS ANGELES,<br><br>    Defendant and Respondent. | B338478<br>(Los Angeles County<br> Super. Ct. No. 22STCV14548) |

APPEAL from judgment and order of the Superior Court of the County of Los Angeles, Kristin S. Escalante, Judge. Affirmed.

Pessah Law Group and Maurice D. Pessah; and Joseph S. Socher for Plaintiff and Appellant.

Musick, Peeler & Garrett, Cheryl A. Orr and Jacquelene A. Robinson, for Defendant and Respondent.

Rebecca Ehrlich appeals after summary judgment was granted in favor of her former employer, the Jewish Federation-Council of Greater Los Angeles (the Federation), on her complaint for pregnancy and gender discrimination, retaliation, and harassment in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, et seq.) and for infliction of emotional distress. She contends triable issues of fact precluded summary judgment and the trial court erred in denying her request for relief under Code of Civil Procedure, section 437c, subdivision (h) (section 437c(h)).[1] Ehrlich also contends the trial court erred in denying her motion for a new trial or to vacate the judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The following facts are undisputed.[2]

---

[1] Undesignated statutory references in this opinion are to the Code of Civil Procedure. Undesignated references to rules are to the California Rules of Court.

[2] Ehrlich violated the requirements governing responses to a moving party's statement of undisputed material facts. (Rule 3.1350(f)(2); § 437c, subd. (b)(3).) She avoided unequivocally stating whether many facts were disputed or undisputed. She also failed to describe the nature of her dispute or cite evidence supporting the existence of a controversy. In these instances, we treat the facts as undisputed. (See *Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 319 [a plaintiff's failure to follow each disputed material fact with a reference to supporting evidence "essentially leav[es] those facts uncontroverted"]; *Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902 [opposing party's noncompliance with separate statement requirements is grounds for granting motion].)

### 1. Ehrlich's Employment With the Federation and Move to New York

The Federation, a California nonprofit corporation, provides humanitarian relief and raises and distributes funds for social and educational programs. Its principal place of business is in Los Angeles, as are most of its donors, and it has never been licensed to do business in New York.

The Federation hired Ehrlich in 2016 and promoted her to Senior Donor Relations Associate in early 2019. The role required her to "'manag[e] a portfolio of donors primarily through field-based *face to face* donor contact, securing meetings and soliciting gifts.'" It also required travel to "'frequent donor meetings *outside of the office*.'" Before the COVID-19 pandemic, she typically attended events "two to three nights a week, minimum," in addition to at least five weekly in-person donor meetings.

Ehrlich went on maternity leave in early 2020 after the birth of her first child. The pandemic began soon after, during which Federation's employees worked remotely. When her leave ended in June 2020, Ehrlich was living in New York.

### 2. The Federation Announces Its Return-To-Work Policy

By early April 2021, others on the donor relations team had resumed in-person donor meetings. Internal discussions ensued about the entire team doing the same. In two meetings in April, Ehrlich's immediate supervisor, Andrew Cushnir, the Federation's Executive Vice President of Donor Relations, asked her about returning to Los Angeles. Cushnir, in what Ehrlich described as a "condescending" tone, told her it was her

responsibility to meet with donors and solicit donations, and she should be doing that.

Human resources invited all employees to a Zoom meeting on May 5, 2021. The invitation attached information about all employees returning to in-person work on August 2, 2021. At the May 5 meeting, Jay Sanderson, the Federation's Chief Executive Officer, discussed the office reopening and return-to-work plan. He commented that multiple staff members were working remotely, including "'one individual working as far as New York,'" and they all would need to return to in-person work in Los Angeles.[3]

### 3. Ehrlich's Complaint to Human Resources

On May 10, 2021, Ehrlich complained to Cyndie Ayala, the Federation's Senior Vice President of Administration and Human Resources, that she felt singled out, bullied, and harassed by Sanderson and Cushnir. Ayala took notes and agreed to investigate, and Ehrlich expressed she "felt good" about the investigation plan. During this call, Ehrlich said she was not willing to meet with donors outside of the office.

Ayala spoke with Cushnir and Sanderson. Cushnir reported informing Ehrlich of his expectation that she meet face-to-face with donors, but she repeatedly deflected inquiries about her return plans. Ayala directed him to refrain from raising the

---

[3] Ehrlich argues that Sanderson also commented that the New York employee was on vacation and receiving free childcare. She did not, however, provide a citation to evidence of this comment in her response to the statement of undisputed facts. This failure precludes her from relying on the alleged comment to raise a triable issue. (Rule 3.1350(f)(3).)

4

subject, and he complied. Sanderson said he meant no offense, only to reiterate his desire to have employees return to in-person work and for the donor relations team to resume face-to-face meetings to facilitate fundraising. Ayala concluded there was no wrongdoing and no basis for further action.

### 4. Ehrlich's Second Pregnancy and Conclusion of Ayala's Investigation

On July 9, 2021, Ehrlich learned she was pregnant.

Ayala and Ehrlich discussed the investigation on July 16, 2021. Ehrlich indicated she was satisfied with the results, and no further action was necessary. According to Ehrlich, they also discussed her pregnancy.[4] Ehrlich understood the all-staff return remained scheduled for August but said she was not yet comfortable meeting face-to-face with donors. In discussing her comfort level, Ehrlich testified that Ayala asked whether she "was affected by the pregnancy." Ehrlich responded "no" and explained that her position was because her son was not vaccinated.

### 5. Ehrlich's Separation from the Federation

On July 26, 2021, human resources emailed information to all employees about the August 2, 2021 reopening. Ehrlich understood she was expected to return to Los Angeles by then and meet with donors in person.

---

[4] Ayala denied learning of Ehrlich's pregnancy in that conversation, but for purposes of our analysis, we will assume she did. Ehrlich informed other co-workers of her pregnancy the same day. She does not contend the Federation was aware of her pregnancy before July 16.

During a July 27, 2021, call, Ayala asked Ehrlich if she planned to return to in-person work by the reopening date. Ehrlich said she would not agree to resume in-person donor meetings until her child received the COVID-19 vaccine. Ehrlich understood that, if she were not willing to return to in-person donor meetings by August 2, the Federation was "letting [her] go." They chose July 30, 2021, as her last day so she could close out her donor portfolio. [5]

On July 29, 2021, the Federation announced to employees that the reopening date would be delayed to September 9, 2021, due to a surge in COVID-19 infections.

On July 30, 2021, Ehrlich asked Maria Spassoff, the Federation's Vice President of Human Resources, to confirm whether her termination was proceeding. Spassoff stated that Ehrlich's employment had not been terminated, and she wanted to discuss Ehrlich's "future with the Federation." Ehrlich did not reply.

On August 3, 2021, Ivan Wolkind, the Federation's Chief Financial and Operating Office, wrote to Ehrlich. He stated the return-to-work policy applied to all staff, the date for returning had been postponed until September, at which time, all vaccinated fundraising staff, including Ehrlich, had to resume in-person meetings and events. In addition, Wolkind expressed concern about Ehrlich's prolonged stay in New York, as taxes had been withheld based on her California residency. The Federation, he wrote, was not authorized to do business in New York and could not employ a New York resident.

---

[5] The Federation claims Ehrlich voluntarily resigned on September 17, 2021. For purposes of our analysis, we accept Ehrlich's evidence that she was terminated as of July 30.

6

Wolkind also wrote that management had no knowledge that the pregnancy impacted Ehrlich's ability to work, but if that belief was inaccurate or if she needed an accommodation to perform her job, she should provide a doctor's note detailing any such accommodation. "Otherwise, based on Federation policy and our inability to employ residents of New York, if you wish to remain a Federation employee, you must return to in-person work, in California, by September 9, 2021. If you choose to remain in New York, we can explore options for your separation from the Federation." In her reply the next day, Ehrlich did not commit to returning or request any accommodation.

On August 5, 2021, Wolkind asked Ehrlich again to confirm her return to Los Angeles by the reopening date. Ehrlich did not respond to this email or another on August 9, in which Wolkind stated Ehrlich was being paid, had access to office systems, and should perform her job duties as directed by her supervisors.

On September 9, 2021, all employees returned to in-person work. Ehrlich did not fulfill her job duties in August or September 2021, though she remained an active employee on the Federation's payroll. The Federation processed her separation as a voluntary resignation as of September 17, 2021, and paid her final paycheck and unused vacation time.

## B.    Procedural History

In early May 2022, Ehrlich filed the operative complaint, which asserted claims for (1) retaliation (Gov. Code, § 12940, subd. (h)); (2) unlawful pregnancy discrimination (*id.,* § 12940, subd. (a)); (3) unlawful gender discrimination (*id.,* § 12940, subd. (a)); (4) pregnancy harassment (*id.,* § 12940, subd. (j)); (5) failure to prevent unlawful discrimination and harassment

7

(*id.*, § 12940, subd. (k)); (6) failure to investigate or take corrective action (*id.*, § 12940, subd. (j)(1)); (7) intentional infliction of emotional distress (IIED); and (8) negligent infliction of emotional distress (NIED).

Trial was initially set for November 6, 2023. In July 2023, the trial court granted the Federation's contested request to continue the trial date. Trial was continued to January 29, 2024, and the discovery and discovery motion cutoffs were extended to December 30, 2023, and January 15, 2024, respectively.

On October 5, 2023, the Federation filed its motion for summary judgment, or in the alternative, summary adjudication. Ehrlich filed her opposition on December 6, 2023. The motion was heard on December 20, 2023 and granted on January 8, 2024.

On January 29, 2024, Ehrlich filed her motion for new trial (§ 657) and to vacate the judgment (§ 662) (new trial motion). On February 5, 2024, the court entered judgment. On March 29, 2024, it denied the new trial motion.

On April 30, 2024, Ehrlich filed notices of appeal from the judgment and from the order denying the new trial/vacatur motion.

### DISCUSSION[6]

**A.    Summary Judgment Motion**

*1.    Motion Proceedings and Claims of Error*

The Federation's motion relied on the above-recited undisputed facts, which were supported by declarations from

---

[6]    The deadline to timely file a notice of appeal was April 29, 2024. The Federation moves to dismiss the appeal because the notices were

Spassoff, Sanderson, Cushnir, and Ayala, excerpts from their and Ehrlich's depositions, and exhibits. Relevant to this appeal, the Federation contended that Ehrlich could not establish that (1) she suffered any adverse employment action because of her pregnancy, (2) its legitimate, non-discriminatory reasons for ending her employment were pretextual, or (3) it retaliated against her based upon a protected activity. It further contended that Ehrlich could not establish that harassment was attributable to a protected characteristic or was sufficiently severe or pervasive.

In her opposition, Ehrlich argued she was terminated 11 days after disclosing her pregnancy on July 16, 2021, and at the time, was willing to work in the Federation's office, though unwilling to meet with donors externally. She argued the reasons given for her discharge were pretextual. She filed a one-page declaration and relied primarily on her own deposition testimony to raise triable issues. The trial court sustained the Federation's objections to Ehrlich's entire declaration and its exhibits. This ruling is not challenged on appeal.

On appeal from summary judgment, Ehrlich contends there were triable issues as to whether the given termination reasons were pretextual and "on her harassment claims." (Boldface

_____

filed a day late. We deny the motion. Ehrlich's counsel declares that on April 29 notices of appeal were submitted to the superior court for filing, but the clerk rejected them on April 30 because they omitted counsel's zip code. Corrected notices were filed on April 30. We deem the notices of appeal to be timely filed. (See *Lazar v. Bishop* (2024) 107 Cal.App.5th 668, 676 [notice of appeal deemed timely though dated four days late, where submitted before deadline expired but subsequently rejected because counsel miscategorized it in the dropdown menu for electronic filing].)

omitted.)  She argues that reversal of the ruling as to the primary discrimination and retaliation claims also requires reversal of the rulings on the derivative FEHA failure to prevent discrimination claim and the IIED and NIED claims.  Finally, she contends the court erred in denying relief under section 437c(h).

### 2. Governing Law and Standard of Review

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law.  (§ 437c, subd. (c).)  A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

### 3. Discrimination and Retaliation Claims

In her retaliation claim (Gov. Code, § 12940, subd. (h)), Ehrlich alleged she tried to report Cushnir's and Sanderson's conduct, but instead of addressing her grievances, the Federation discharged her.  In her discrimination claims (*id.*, § 12940, subd. (a)), Ehrlich alleged she was a member of a protected class, and her pregnancy and gender were a factor in the Federation's termination decision.  The trial court granted summary adjudication of these claims because it found Ehrlich was terminated because of her refusal to return to work on an in-person basis, and she failed to raise a triable issue that this

10

reason was pretextual. The court also found she did not raise a triable issue as to discrimination or that she was harassed because of her protected status.

FEHA makes it unlawful for an employer "to discharge [a] person from employment . . . or to discriminate against the person . . . in terms, conditions, or privileges of employment" because of the person's sex or gender, among other protected categories. (Gov. Code, § 12940, subd. (a).) "'Sex'" is defined to include pregnancy or medical conditions related to pregnancy. (*Id.*, § 12926, subd. (r)(1).) FEHA also makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part . . . ." (*Id.,* § 12940, subd. (h).)

Presented with direct evidence of discrimination or retaliation, a defendant can avoid liability by proving that the plaintiff would have been subject to the same adverse employment decision absent discrimination or retaliation. (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 34 (*Zamora*).) "Direct evidence is evidence that proves a fact without inference or presumption." (*Id.* at p. 35.) In most cases, however, only circumstantial evidence is available. In those cases, California courts use the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, at pages 802 through 805. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214 [discrimination]; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*) [retaliation].)

Under this framework, the employee bears the initial burden of setting forth a prima facie case of discrimination or retaliation. A plaintiff claiming discrimination must demonstrate: "(1) he was a member of a protected class, (2) he

11

was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination . . . and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.)

A plaintiff claiming retaliation must show: "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz, supra,* 36 Cal.4th at p. 1042.)

Once an employee establishes a prima facie case, the employer must offer a legitimate reason for the adverse employment action. (*Yanowitz, supra*, 36 Cal.4th at p. 1042.) If the employer does so, the presumption of retaliation or discrimination """"drops out of the picture,"""' and the burden shifts back to the employee to prove intentional retaliation" or discrimination. (*Ibid*.) To meet this final burden, the plaintiff "must produce substantial responsive evidence to show that [the employer's] ostensible motive was pretextual; that is, 'that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence.'" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).) The plaintiff need not prove that discriminatory or retaliatory animus was the sole motivation behind the challenged action, but "must produce evidence that, taken as a whole, permits a rational inference that intentional discrimination [or retaliation] was a substantial motivating reason for the adverse action." (*Carroll v. City and County of San Francisco* (2025) 115 Cal.App.5th 1192, 1204.)

These burdens are altered somewhat in the summary judgment context. (*Zamora, supra*, 71 Cal.App.5th at p. 32.) The employer, as the moving party, bears the initial burden of producing admissible evidence showing either (1) a deficiency in one or more elements of the employee's prima facie case, or (2) that legitimate, nondiscriminatory factors motivated the adverse employment decision at issue. (*Ibid.*) If the employer satisfies this burden, it is entitled to summary judgment or adjudication unless the plaintiff comes forward with admissible evidence that raises a triable issue of fact material to the employer's showing. (*Ibid.*)

>     a.    The Federation Had a Legitimate Reason For Termination

The trial court found, and we agree, that the Federation carried its initial burden on summary judgment. The Federation's return-to-work mandate applied to all employees and was announced before Ehrlich knew she was pregnant. In-person donor meetings were a principal duty of Ehrlich's job as a fundraiser, and all members of her team were directed to resume them. Ehrlich was terminated when she refused to comply. This was a legitimate, nondiscriminatory, nonretaliatory reason for termination, and the burden shifted back to Ehrlich to produce substantial responsive evidence to show the Federation's ostensible motive was pretextual. (*Yanowitz, supra*, 36 Cal.4th at p. 1042.)

13

b.     Ehrlich Failed to Raise a Triable Issue as to Pretext

Ehrlich fails to persuade us that she raised a triable issue as to whether a discriminatory reason motivated her discharge.

First, Ehrlich argues she did not refuse to return to *all* in-person work, only meetings outside of the office with donors. She does not explain, however, how this selective unwillingness shows that her gender or pregnancy motivated the termination decision.

Second, Ehrlich contends her refusal to resume in-person meetings became a basis for termination only after she disclosed her pregnancy. She argues this inference may be drawn from the Federation's decision to extend the return-to-work mandate from August to September 2021 and from evidence that, until July 27, 2021, return to in-person work was dependent on the employees' comfort level. We disagree.

A surge in COVID-19 infections was the reason for the Federation's decision to briefly delay implementation of the return-to-work policy. After the new date was announced, the Federation informed Ehrlich multiple times that her employment had not been terminated, and it continued to pay her, kept open her access to office systems, and invited her to request an accommodation of her pregnancy. A motivation to terminate Ehrlich because of her pregnancy cannot reasonably be inferred from these circumstances.

As for a return-to-work policy that depended on individual comfort level, Ehrlich did not raise or develop this argument in the trial court. Her opposition brief did not suggest there were exceptions to the policy. (*Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065 [plaintiff forfeits

14

contention that evidence raised a triable issue where argument was not made in opposition brief].)  If not forfeited, her argument is unpersuasive.  Even if the Federation had at one time permitted fundraisers to avoid in-person donor interactions based on their personal preferences, the Federation consistently communicated that such interactions would become mandatory no later than the companywide reopening.

Third, Ehrlich argues that pretext may be inferred from the Federation's shifting and inconsistent reasons for ending her employment.  She argues that Ayala cited the violation of the return-to-work mandate as the basis for termination, while Wolkind cited the Federation's inability to employ New York residents.  It is undisputed, however, that Wolkind's August 3, 2021, email stated both that Ehrlich was required to comply with the Federation's in-person work policy, and "[i]n addition," the Federation could not employ a New York resident. These reasons are not incompatible and may not properly be characterized as shifting reasons that give rise to an inference of a discriminatory motive.  (See *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 815, citing *Nidds v. Schindler Elevator Corp.* (9th Cir. 1996) 113 F.3d 912, 918.)  The Federation could reasonably expect a fundraiser to engage donors in the manner prescribed by her job description and as directed by her supervisors while simultaneously seeking to comply with business and tax laws.

Fourth, Ehrlich argues that pretext may be inferred from an inadequate investigation of her complaints.  She argues that "no real investigation occurred" because Spassoff, the Vice President of Human Resources, never saw Ayala's notes or other documentation.  However, undisputed evidence established that

15

Ayala heard Ehrlich's complaints, took notes, proposed and received her approval of an investigation plan, spoke with Sanderson and Cushnir, reported the results to Ehrlich, and confirmed Ehrlich's satisfaction with the results. Ayala also directed Cushnir to cease the specific behavior Ehrlich reported, and he complied. No reasonable factfinder would find this investigation gave rise to an inference of a discriminatory motive.

Finally, Ehrlich argues that pretext may be inferred from the fact she was terminated shortly after disclosing her pregnancy. Temporal proximity alone is insufficient to carry an employee's burden to show a triable issue of fact on whether the employer's articulated reason was pretextual. (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1112; see *King, supra,* 152 Cal.App.4th at p. 436 [employee's discharge for violating corporate integrity policy less than two months after he returned from a medical leave was insufficient to raise inference that medical condition prompted his discharge].) Here, the Federation ended Ehrlich's employment because she stated her refusal to comply with the return-to-work mandate and perform a core job duty. The fact that this occurred close in time to the revelation of her pregnancy is insufficient to permit an inference that the pregnancy prompted the decision.

Because Ehrlich failed to show a triable issue as to a pretextual termination reason, the trial court did not err in granting summary adjudication of the discrimination and retaliation claims.[7] (*Zamora, supra,* 71 Cal.App.5th at p. 32.)

---

[7] Our holding on this basis renders it unnecessary for us to address any argument concerning the trial court's alternative grounds for summary adjudication on the discrimination and harassment claims.

16

*4.     Pregnancy Harassment*

In support of her fourth cause of action for pregnancy harassment, Ehrlich alleged the Federation engaged in a pattern of harassment "for her decision to temporarily locate out of Los Angeles," causing her to "perceive her work environment as intimidating, hostile, abusive and/or offensive."  Cushnir, she alleged, began harassing her in "early 2021" by inquiring about when she would return to Los Angeles.  The alleged harassment "worsened [and came] to a head" at the May 5 Zoom meeting, when Sanderson "[ridiculed her] decision to work remotely."  The Federation allegedly did not conduct "a prompt and thorough investigation," allowing the harassment to continue.

"To establish a prima facie case of unlawful harassment under FEHA, a plaintiff must show '(1) [s]he was a member of a protected class; (2) [s]he was subjected to unwelcome . . . harassment; (3) the harassment was based on [the plaintiff's membership in an enumerated class]; (4) the harassment unreasonably interfered with h[er] work performance by creating an intimidating, hostile, or offensive work environment; and (5) [the employer] is liable for the harassment.' [Citation.]" (*Martin v. Trustees of California State University* (2023) 97 Cal.App.5th 149, 170.)  Relevant here, "'[t]he law prohibiting harassment is violated "[w]hen the workplace is permeated with discriminatory intimation, ridicule and insult that is '"*sufficiently severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment."'"' [Citation.]" (*Ibid.*, italics added.)

On appeal, Ehrlich does not challenge the trial court's finding that she failed to raise a triable issue regarding sufficiently severe or pervasive harassment.  Even on de novo

17

review, Ehrlich, as the appellant, bears the burden to affirmatively demonstrate error.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913 [even under a de novo standard of review, "the appellant must frame the issues for us, show us where the superior court erred, and provide us with the proper citations to the record and case law"]; *Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1 [argument not raised in opening brief is deemed to have been abandoned or waived].)  Because she failed to demonstrate a triable issue on a requisite element of harassment, we discern no error in summarily adjudicating this claim.

### 5.  *Failure to Prevent Discrimination, IIED, and NIED*

Ehrlich's next contention of error is directed to the claim for failure to prevent discrimination (Gov. Code, § 12940, subd. (k)) and "common claims," which are presumably the IIED and NIED claims.  She argues that reversal of summary adjudication of the discrimination and retaliation claims requires reversal of summary adjudication of these claims.

We agree that the FEHA failure-to-prevent claim stands or falls on the merits of Ehrlich's discrimination and retaliation claims.  (See *Paleny v. Fireplace Products U.S., Inc.* (2024) 103 Cal.App.5th 199, 213.)  As Ehrlich's claims for discrimination and harassment fail as a matter of law for the reasons we have explained, so too does her FEHA failure-to-prevent claim.

Ehrlich does not address the trial court's rulings on the emotional distress claims.  She does not discuss the court's findings that the Federation carried its initial burden of demonstrating no extreme or outrageous conduct and that

18

Ehrlich failed to raise a triable issue on that fact. She does not challenge the court's findings that her NIED claim was barred by the workers' compensation exclusivity rule and that she could not show the violation of any duty to prevent emotional distress. As Ehrlich has not demonstrated error by the court, we conclude summary adjudication was properly granted on these claims.

## B.    Denial of Relief Under Section 437c(h)

As an alternative basis for relief, Ehrlich alleged the Federation engaged in various discovery abuses,[8] and she requested either a continuance of the summary judgment hearing or denial of the motion outright pursuant section 437c(h).[9] The court denied the request, finding Ehrlich did not identify any facts she was unable to obtain were essential to opposing summary judgment. We discern no abuse of the trial court's discretion. (See *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100.)

A party requesting relief under section 437c(h) must show, through supporting declarations, ""[f]acts establishing a likelihood that controverting evidence may exist and why the

---

[8]    The purported misconduct included service of defective or belated privilege logs, conducting an inadequate search for documents responsive to production requests, failing to produce Ayala to complete a deposition that began in early 2023, and instructing Spassoff not to answer certain questions at her deposition.

[9]    Section 437c(h) provides, in pertinent part: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. . . ."

19

information sought is essential to opposing the motion . . . ."'""
(*501 East 51st Street, etc. v. Kookmin Best Ins. Co., Ltd.* (2020) 47
Cal.App.5th 924, 939.)  Despite vaguely declaring that "essential
facts" may exist and could be discovered through the depositions
of Ayala, Spassoff, and Cushnir and pending discovery motions,
Ehrlich did not identify any fact(s) that could raise a triable
issue.

On appeal, Ehrlich still does not articulate what facts were
unavailable to her that could have raised a triable issue.  Instead,
she argues she was held to an "impossibly high" degree of
specificity, and a similarly nonspecific declaration was found to
be sufficient to support a continuance in *Frazee v. Seely* (2002) 95
Cal.App.4th 627 (*Frazee*).

*Frazee* is distinguishable.  There, a continuance was
warranted to allow preparation of the defendant's deposition
transcript, where the declaration of plaintiff's counsel established
that the testimony included admissions tending to prove
elements essential to claims of legal malpractice and breach of
fiduciary duty, such as misrepresentations made to the plaintiff.
(*Frazee, supra*, 95 Cal.App.4th at p. 633.)  Here, Ehrlich failed to
identify even the claims as to which a triable issue might be
raised if she could complete discovery.  Even under *Frazee,* her
showing was deficient.

## C.    Motion For New Trial

Ehrlich argued to the trial court that the Federation's
alleged discovery abuses were irregularities in the proceedings
warranting a new trial pursuant to section 657.  She also
contended that "'newly discovered evidence'" came to light after
the summary judgment motion was fully briefed:  deposition

testimony given by her former coworker, Alexi Baker, on December 29, 2023.

A motion for a new trial may challenge an order granting summary judgment. (*Doe v. United Air Lines, Inc.* (2008) 160 Cal.App.4th 1500, 1504.) Section 657 provides that a new trial may be granted for "causes, materially affecting the substantial rights of such party" including "1. Irregularity in the proceedings . . . by which either party was prevented from having a fair trial . . . 4. Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." We review the trial court's order for abuse of discretion. (*Doe, supra,* 160 Cal.App.4th at pp. 1504–1505; *Higginson v. Kia Motors America, Inc.* (2026) 118 Cal.App.5th 316, 344.)

Section 657 required Ehrlich to show how the alleged discovery abuses "materially affect[ed] [her] substantial rights." To do so, she had to demonstrate a reasonable probability she would have obtained a more favorable result in the absence of the alleged discovery issues. (*TRC Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1063.) Ehrlich did not meet this requirement, as her motion papers did not identify any facts she was prevented from discovering that would establish triable issues on, e.g., pretext, discrimination, retaliation, harassment, and she does not do so on appeal. Thus, she failed to show any probability of a more favorable result on summary judgment if a new trial were granted.

Ehrlich's alternative basis for a new trial—the deposition of her former coworker Baker —fares no better. A party requesting a new trial for newly discovered evidence must establish reasonable diligence in discovering and producing that evidence.

21

(*Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 646.) The Federation presented evidence indicating Ehrlich believed Baker possessed relevant knowledge but waited until after the deadline to oppose summary judgment to notice her deposition. Ehrlich did not explain why the deposition could not have been taken earlier. The trial court found that she did not exercise reasonable diligence in obtaining Baker's deposition, and Ehrlich does not contest this finding on appeal. Even if we were to assume Baker gave relevant testimony, the court was within its discretion to find Ehrlich unjustifiably delayed in obtaining it and denying a new trial on that basis.

## DISPOSITION

The judgment and the order denying a new trial are affirmed. The Federation shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, Acting P. J.

We concur:

TAMZARIAN, J.

\*\*COGLIATI, J.

---

\*\* Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.